**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| NDGS, LLC<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Radium2 Capital, Inc.,<br><br>　　　　　Defendant. | Case No. 19-CV-1554 (SRN/BRT)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

James W. Moen and Joseph A. Wentzell, Wentzell Law Office, PLLC, 2812 Anthony Lane South, Suite 200, Saint Anthony, MN 55418, for Plaintiff.

Bethany J. Rubis, Ask LLP, 2600 Eagan Woods Drive, Eagan, MN 55121; and Shanna M. Kaminski, Varnum LLP, 160 W. Fort Street, Suite 5th Floor, Detroit, MI 48226, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

Before the Court is Defendant Radium 2 Capital, Inc.'s ("Radium2") Motion to Dismiss, or in the alternative, Transfer Venue or Stay Case [Doc. No. 10] seeking either dismissal, transfer, or a stay based on, among other theories, the first-filed rule. For the reasons set forth below, the Court grants Radium2's Motion and orders that the case be stayed pending resolution of the parallel New York proceedings.

I.　　**BACKGROUND**

At the motion-to-dismiss stage, the Court construes the facts in favor of, and in the light most favorable to, the nonmoving party (here NDGS, LLC, or "NDGS"). *See*

1

*Awnings v. Fullerton*, 912 F.3d 1089, 1101 (8th Cir. 2019) (presuming the truth of the nonmoving party's factual allegations in a motion to dismiss).

### A. The Parties and Related Entities

Plaintiff NDGS is a limited liability company organized under the laws of North Dakota. (*See* Am. Compl. [Doc. No. 9] at 1.) NDGS operates a small chain of grocery stores known as "Jack & Jill" in North Dakota. (*Id.* at 2.) NDGS is owned by Duane Johnson ("Johnson"), who owns and operates numerous small businesses in Minnesota and North Dakota. (*Id.*)

Defendant Radium2 is a New York corporation with its principal place of business in New York. (Radium2 Mem. in Supp. of Mot. ("Radium2 Mem.") [Doc. No. 12] at 1.) It provides working capital to businesses and bills itself as a "merchant cash advance company." (*Id.* at 1–2; Radium2 Ex. 6 – New York Supreme Court Notice of Petition (Index No. 801410/2019) (henceforth "NY Special Proceeding Petition") [Doc. No. 13-5] at 10.)

### B. Factual Background

Beginning in 2018, Dan and Jenna Ross expressed interest in purchasing NDGS and its assets (namely, the Jack & Jill grocery stores). (Am. Compl. [Doc. No. 9] at 2.) Accordingly, Johnson and the Rosses entered into negotiations, during which the Rosses were provided with access to NDGS's financial and business records in order to conduct due diligence about a possible sale. (*Id.*) Following negotiations, however, the Rosses decided not to purchase NDGS or its assets. (*Id.*)

NDGS contends that after negotiations concluded, the Rosses used the NDGS business and financial documents obtained during negotiations to secure a $250,000 payment from

2

Radium2 in exchange for Radium2's right to $355,000 of NDGS's future receivables. (*Id.* at 3.) NDGS asserts that Jenna Ross masqueraded as the owner and manager of NDGS, and altered and falsified NDGS documents in order to strengthen her misrepresentations and obtain this purchase money. (*Id.*) Radium2 generally agrees that the Rosses appeared to have misrepresented their authority or position with NDGS, but takes the position that Johnson was working in tandem with the Rosses to perpetrate fraud on Radium2. (*See* Radium2 Mem. [Doc. No. 12] at 1–2, 5; Radium2 Ex. 1 [Doc. No. 13] (purportedly false articles of organization).) Jenna Ross also executed an Affidavit of Confession of Judgment in favor of Radium2 in which she confessed judgment, individually and personally as well as jointly and severally, against herself and NDGS in the event of a default under the agreement between Ross, NDGS, and Radium2. (*See* Radium2 Ex. 3 [Doc. No. 13-2].) After purportedly engaging in due diligence, Radium2 approved Ross's application for payment. (Radium2 Mem. [Doc. No. 12] at 2.)

On or about September 10, 2018, Radium2 entered into an "Agreement for the Purchase and Sale of Future Receipts" (henceforth, the "Future Receipts Agreement") with Ross and, allegedly, NDGS. (*See* Am. Compl. [Doc. No. 9] at 3 (noting the agreement's existence but asserting NDGS is not bound by it); Radium2 Mem. [Doc. No. 12] at 2–3, 5 (contending the agreement binds NDGS).) Per that agreement, on September 12, 2018, Radium2 wired $242,475 to a bank account in NDGS's name. (*See* Radium2. Ex. 4 [Doc. No. 13-3]; *see also* NDGS Mem. in Opp'n to Mot. ("NDGS Mem.") [Doc. No. 17] at 4–5 (noting the funds were wired to an NDGS bank account).) NDGS contends that the Rosses convinced Johnson that the reason the Rosses were using NDGS's bank account was to permit

3

them to repay money that the Rosses owed to Johnson stemming from a prior loan between a different Johnson-owned company and a Ross-owned company. (NDGS Mem. [Doc. No. 17] at 4-5.) Per the Future Receipts Agreement, Radium2 was being repaid through daily withdrawals from the NDGS bank account in the amount of $2,113.10. (Radium2 Ex. 2 [Doc. No. 13-1] at 2.) On about October 25, 2018, however, Dan Ross purportedly terminated the payments to Radium2.[1] (NDGS Mem. [Doc. No. 17] at 5.)

### C. Procedural Posture

After Radium2 stopped receiving repayments, it filed the Confession of Judgment executed by Jenna Ross in New York state court. (*Id.* at 6.) On November 9, 2018, based on the confession and other evidence, Radium2 obtained a judgment in its favor against NDGS and Jenna Ross in the amount of $363,868.99 (*See* Radium2 Ex. 5 - New York Supreme Court Judgment (Index No. 18-817680) (henceforth "NY Judgment") [Doc. No. 13-4] at 2.) On January 29, 2019, Radium2 commenced a special proceeding against NDGS, Jenna Ross, several other NDGS-named entities, Johnson, and Daniel Wessman in New York state court in order to execute and recover under its November 2018 judgment. (*See* Radium2 Ex. 6 NY Special Proceeding Petition [Doc. No. 13-5].) On March 5, 2019, NDGS removed the special proceeding to the United States District Court for the Western District of New York. (*See* Radium2 Ex. 8 – Notice of Removal (henceforth "Removal Notice") [Doc No. 13-7] at 26.) On June 13, 2019, following removal of the New York special proceeding, NDGS filed the present case before this Court. (*See* Am. Compl. [Doc. No. 9].)

---

[1] The record does not establish when, how, or why Dan Ross acquired and maintained authority over NDGS bank accounts for the purposes of managing withdrawals.

4

On May 20, 2019, in the District Court for the Western District of New York, Radium2 sought remand back to the New York state courts. (*See* Radium2 Ex. 8 [Doc. No. 13-7] at 17.) After briefing on this motion in this case was completed, but before oral argument, the District Court for the Western District of New York granted Radium2's motion to remand based on the ancillary doctrine and remanded the case back to New York state court. (*See* Radium2 Suppl. Ex. 1 – Remand Order, No. 19-cv-286 (W.D.N.Y. Aug. 15, 2019) [Doc. No. 21-1].)

On July 15, 2019, in the present case and before this Court, Radium2 filed this motion to dismiss or in the alternative to transfer or stay. (*See* Motion to Dismiss or in the alternative, Transfer or Stay [Doc. No. 10].) Radium2 rests its motion on several grounds: (1) the first-filed rule; (2) a forum selection clause in the Future Receipts Agreement; and (3) the ability of this Court to transfer this action to a New York court. (Radium2 Mem. [Doc. No. 12].) NDGS opposes the motion, and argues that (1) the first-filed rule does not apply; (2) this case cannot be dismissed under Fed. R. Civ. P. 12(b)(3); (3) the forum selection clause in the Future Receipts Agreement is inapplicable to NDGS; and (4) this forum is the most convenient place for this action. (NDGS Mem. [Doc. No. 17].) The Court heard argument on the motion on September 20, 2019. (*See* Minutes [Doc. No. 23].)

**II.    DISCUSSION**

For the reasons discussed below, the Court grants Radium2's motion based on the state-federal parallel proceeding abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818 (1976).

5

### A. Inapplicability of the First-Filed Rule

Radium2 asserts that the first-filed rule applies to this case. However, due to the recent remand by the District Court for the Western District of New York of Radium2's special proceeding back to New York state court, this Court holds that the first-filed rule is inapplicable, and instead, the *Colorado River* abstention doctrine applies.

The first-filed rule allows a court to dismiss a case that is duplicative of a parallel proceeding already brought in another forum. *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990) (citing *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir. 1985)). The contours of the "well-established rule" compel that "in cases of concurrent jurisdiction, 'the first court in which jurisdiction attaches has priority to consider the case.'" *Id.* (quoting *Orthmann*, 765 F.2d at 121). In situations where duplicative proceedings have been instituted, "absent compelling circumstances . . . the first-filed rule should apply." *Id.* at 488–89 (citations omitted) (internal quotation marks omitted). Still, the rule is "not intended to be rigid, mechanical, or inflexible," but rather must be "applied in a manner best serving the interests of justice." *Id.* at 488 (citation omitted) (internal quotation marks omitted).

The "compelling circumstances" that may justify a deviation from the normal application of the first-filed rule take the form of a two-step decision process. First, courts look for two "red flags" that may constitute compelling circumstances: (1) the party filing first had notice that the other party planned to file suit imminently; or (2) the party filing first seeks a declaratory judgment, since that remedy "may be more indicative of a preemptive strike than a suit for damages or equitable relief." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989

F.2d 1002, 1007 (8th Cir. 1993). Second, assuming those "red flags" are not present, the court reviews the fact pattern in the case in its entirety to identify other possible compelling circumstances indicating bad faith or a race to the courthouse. *See id. Boatmen's First Nat'l Bank v. Kansas Pub. Employees Retirement Sys.*, 57 F.3d 638, 641 (8th Cir. 1995) (citation omitted) (internal quotation marks omitted).

The application of the first-filed rule to federal-state concurrent cases is an issue that has divided federal courts. *See Cent. States Indus. Supply, Inc. v. McCullough*, 218 F. Supp. 2d 1073, 1092 (N.D. Iowa 2002) (noting "the split among the federal courts regarding the applicability of the first-filed rule to concurrent litigation filed in a state court and a federal court" and collecting cases); *see also Pragmatic Software Corp. v. Antrim Design Sys.'s Inc.*, No. 02-cv-2595 (JRT/FL), 2003 WL 244804, at *3 (D. Minn. Jan. 28, 2003) (noting that there is contrary authority among district courts in the Eighth Circuit as to whether the first-to-file rule applies when the parallel actions are in federal and state court, as opposed to two federal court actions). Still, a "recent 'examination of legal precedent among the federal courts reveals overwhelming support for the application of the first-filed rule to concurrent actions *only as between federal courts.*' " *Pragmatic Software Corp.*, 2003 WL 244804 at *4 (emphasis added) (quoting *Cent. States Indus. Supply*, 218 F. Supp. 2d at 1087) (collecting cases)). Indeed, although it has not explicitly resolved the question, the Eighth Circuit has signaled that it considers the first-filed rule to be applicable only where the two proceedings at issue are brought in two different federal courts, not a federal court and a state court. In *Smart v. Sunshine Potato Flakes, L.L.C.*, the Eighth Circuit noted that the "first filed" doctrine is "not a rule" but rather a "factor" and "is often dominant in determining which *federal* court

should proceed when the parties . . . have filed [cases] in different district courts." 307 F.3d 684, 687 (8th Cir. 2002)  "However, when the issue is whether a federal court should defer to a pending suit in *state* court, as in this case, the order in which jurisdiction was obtained, while still a relevant factor in applying the abstention doctrine, is far less apt to be determinative because of the federal court's 'virtually unflagging obligation' to exercise its jurisdiction." *Id.* (emphasis added) (quoting *Colorado River*, 424 U.S. at 817–18).  Where the parallel proceedings at issue are federal-state, as opposed to federal-federal, the court should apply "the more stringent *Colorado River* abstention" in order to ensure it is "adequately recogniz[ing] federal courts' virtually unflagging obligation to exercise their jurisdiction." *Pragmatic Software Corp.*, 2003 WL 244804 at *4 (citation omitted) (internal quotation marks omitted).  Indeed, the Eighth Circuit has also noted that "a necessary premise of *Colorado River* abstention" is a "pending parallel state and federal court proceeding . . . ." *United States v. Rice*, 605 F.3d 473, 476 (8th Cir. 2010) (citation omitted) (internal quotation marks omitted).

The present action is in federal court.  The parallel proceeding instituted by Radium2 based on its New York judgment is now in New York state court, having just been remanded back by the United States District Court for the Western District of New York.  (*See* Radium2 Suppl. Ex. 1 – Remand Order, No. 19-cv-286 (W.D.N.Y. Aug. 15, 2019) [Doc. No. 21-1].)  Accordingly, the two parallel actions are in federal court and state court, and the *Colorado River* abstention doctrine—not the first-filed rule—applies.  The Court will analyze Radium2's motion under that doctrine.

### B. Application of *Colorado River* Abstention Doctrine

The *Colorado River* abstention doctrine "permits federal courts to decline to exercise jurisdiction over cases where 'parallel' state court litigation is pending, meaning that there is a 'substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court.'" *Spectra Comm'n Grp, L.L.C. v. City of Cameron*, 806 F.3d 1113, 1121 (8th Cir. 2015) (quoting *Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013)); *see also Rice*, 605 F.3d at 476 (noting the Eighth Circuit's heightened requirement that suits are parallel only where "there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court" (citation omitted) (internal quotation marks omitted)). The rule stems from an understanding that courts should engage in "'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (quoting *Colorado River*, 424 U.S. at 817). Still, *Colorado River* abstention is only appropriate "where the surrender of federal jurisdiction is supported by 'the clearest of justifications.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983)).

Courts examine six factors to determine whether there are "exceptional circumstances" justifying abstention:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Id.* (quoting *Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops, Inc.*, 48 F.3d 294, 297 (8th Cir. 1995)). The factors are not a "mechanical checklist," and must be applied " 'in a pragmatic, flexible manner with a view to the realities of the case at hand.' " *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16, 21).

Here, the Court finds that the New York state proceeding is a parallel proceeding that implicates the *Colorado River* abstention factors. NDGS is the plaintiff in this case and one of several respondents in the New York action, whereas Radium2 is the petitioner in the New York case and the defendant in this case. (*Compare* Am. Compl. [Doc. No. 9], *with* Radium2 Ex. 6 NY Special Proceeding Petition [Doc. No. 13-5].) Moreover, the New York proceeding and this case both stem from the exact same underlying facts. From Radium2's perspective, NDGS utilized the Rosses to obtain funds from Radium2 and is now attempting to shield itself from liability by pointing to fraud on the part of the Rosses and avoid paying Radium2. (*See* Radium2 Mem. [Doc. No. 12] at 5.) From NDGS's perspective, the same facts show that the Rosses used documents obtained in a contemplated sale of NDGS's business to fraudulently hold themselves out as owners of the company and induce Radium2 to "loan" funds with NDGS's future receipt as collateral. (*See* NDGS Mem. [Doc. No. 17] at 4–5.) While the parties in each action are not identical, the facts underlying the claims in each case are the same. Indeed, NDGS's claims in this action—for declaratory judgment and injunctive relief—request that the purchase agreement and New York judgment under which Radium2 pursues relief in the New York proceeding be declared void and unenforceable, and that Radium2 be barred from pursuing recovery against NDGS. (Am. Compl. [Doc. No. 9] at 5–

6.) Put succinctly, both this forum and the New York forum are addressing the same underlying issue: the enforceability of an agreement purportedly between Radium2 and NDGS (as well as several individuals). *Cf. Fru-Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 541 (8th Cir. 2009) ("To constitute 'parallel proceedings,' state and federal actions need not be mirror images.").

Because the two proceedings are parallel, the Court now turns to the *Colorado River* abstention factors—considering each in a pragmatic, flexible manner—to determine whether abstention is appropriate in this case.

The first factor—the presence of a res[2] over which one court has established jurisdiction—is inapplicable here. There is no res over which to exercise jurisdiction, at least not at this point in either this case or the New York state court proceeding. As to the second factor—the inconvenience of the federal forum—the Court also finds it to be largely inapplicable. There is no appreciable difference in convenience between New York state court and this Court. Indeed, in support of the New York forum, Radium2 asserts that "all of [its] witnesses and employees are located in New York." (Radium2 Mem. [Doc. No. 12] at 11.) In response, NDGS asserts that "[t]he main witnesses, Johnson and the Ross['s], reside in Minnesota," that "Ms. Ross executed the unauthorized documents submitted to Radium2 in Minnesota in the presence of a Minnesota notary public," and that the false documents submitted to Johnson to convince him that NDGS was not borrowing from Radium2 were created in Minnesota. (NDGS Mem. [Doc. No. 17] at 10.) Ultimately, the case involves a

---

[2] A "res" is an "object, interest, or status, as opposed to a person." *See Res*, Black's Law Dictionary (11th ed. 2019).

North Dakota business, owned by a Minnesota resident, being sued by a New York company, with witnesses and documents purportedly in both locations. Such geographic variety demonstrates that this forum is no more or less convenient than the New York state forum.

The third factor—whether maintaining separate actions may result in piecemeal litigation—is the "predominant factor" and "is a significant concern here." *Spectra Comm'ns Grp., LLC*, 806 F.3d at 1121 (citations omitted) (internal quotation marks omitted). This case and the New York state case involve the same issues and underlying facts, and merely constitute different avenues through which the same issues will be litigated. Here, plaintiff NDGS seeks to affirmatively invalidate—via declaratory judgment and injunctive relief—the purchase agreement purportedly between itself and Radium2. (*See* Am. Compl. [Doc. No. 9].) In New York, as a defendant, NDGS seeks to attack the validity and effect of the same purchase agreement—and judgment entered against it based on that purchase agreement—by asserting fraud as a defense. (*See* Answer & Countercl. in U.S. Dist. Ct. for W. Dist. of N.Y. [Doc. No. 13-6] at 5–13.)[3] In this situation, this court "and [the] state court[] could reach conflicting opinions on the same issues," which could, in turn, " 'cause unwarranted friction between state and federal courts, a result which is obviously undesirable and avoidable in this instance.' " *Spectra Comm'ns Grp., LLC*, 806 F.3d at 1121 (quoting *Emp'rs Ins. of Wausau v. Missouri Elec. Works, Inc.*, 23 F.3d 1372, 1375 (8th Cir. 1994), *abrogated on other grounds by Wilton v.*

---

[3] It appears these defenses are available to NDGS even in the state court proceeding. *See* N.Y. C.P.L.R. 5015(a) (McKinney 2019) (permitting New York courts to relieve a party from judgment for various reasons).

*Seven Falls Co.*, 515 U.S. 277 (1995)). Moreover, the parties do not assert—and this Court does not independently identify—any aspect of the claims or issues involved in this case that require, as a matter of law, piecemeal litigation. Similarly, there are no uniquely federal issues (to the extent they exist at all) that could be easily severed. Accordingly, the third factor strongly favors abstention.

The fourth factor—which case has priority based on the "relative progress made in the cases"—also favors abstention. In addition to the fact that the New York proceedings were filed first and the New York court was the first to obtain jurisdiction, the New York courts have already entered judgment on the underlying facts of this case and are currently considering a special petition proceeding related to enforcement of that judgment. (*See* NY Judgment [Doc. No. 13-4] at 2; *see also* Radium2 Ex. 6 NY Special Proceeding Petition [Doc. No. 13-5].) In contrast, the present case has not proceeded beyond this motion, no discovery has occurred, and the case is nowhere near judgment or any decision based on the merits. Consequently, because the state proceeding is more advanced, the fourth factor favors abstention. *See Spectra Comm'ns Grp., LLC*, 806 F.3d at 1122 (discussing the fourth factor in a largely similar manner).

The fifth factor—whether state or federal law controls—similarly favors abstention. There are no federal law claims in this action, the New York judgment, or the New York special proceeding. Indeed, jurisdiction in this case (per NDGS's complaint) is founded on diversity jurisdiction. (*See* Am. Compl. [Doc. No. 9] at 2.) It appears that this case will be decided on state law, although it is yet undecided which state's law will apply.

13

Finally, the sixth factor—the adequacy of the state forum to protect the federal plaintiff's rights—favors abstention. Nothing in the record indicates that NDGS would not receive a fair shake in state court, "and there is no presumption that a state court is biased or otherwise inadequate to protect" NDGS's rights. *See U.S. Fid. & Guar. Co v. Murphy Oil USA, Inc.*, 21 F.3d 259, 263 (8th Cir. 1994). Moreover, to the extent NDGS is concerned with the judgment entered against it by the New York courts, it appears that relief from that judgment is potentially available. *See* N.Y. C.P.L.R. 5015(a) (McKinney 2019) (permitting New York courts to relieve a party from judgment for various reasons). To that end, the sixth factor favors abstention.

Ultimately, four of the six *Colorado River* abstention factors favor abstention; two are largely inapplicable. Accordingly, the Court holds that abstention is warranted. The next step is to determine the appropriate course of action: dismissal or a stay.[4]

The Eighth Circuit has noted that " 'where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case . . . fails to resolve the matter in controversy.' " *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 797 (8th Cir. 2008) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 n.2 (1995)); *see also Selmon v. Portsmouth Drive Condo. Ass'n*, 89 F.3d 406, 409–10 (7th Cir. 1996) (noting that "a stay, not

---

[4] Transfer is not an option because this court lacks authority to transfer an action to a state court. *See* 28 U.S.C. § 1631 (2012) (permitting transfer to "any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed"); 28 U.S.C. § 610 (2012) ("[T]he word 'courts' includes the courts of appeals and district courts of the United States . . . ."); *Mills v. State of Me.*, 118 F.3d 37, 51 (1st Cir. 1997) (noting that section 610 includes only other federal courts, not state courts).

14

a dismissal, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* doctrine"); *U.S. Fid. & Guar. Co.*, 21 F.3d at 263 (affirming stay of federal case under *Colorado River* abstention doctrine). Indeed, the Supreme Court has noted that an order staying an action "does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only postponement of decision for its best fruition." *Louisiana Pwr. & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29 (1959). Because the present action and the New York state action are parallel proceedings, but are not identical in all respects, the Court finds that preservation of the availability of the federal forum is important should the resolution of the New York state case fail to dispose of all the issues presented by this case. Accordingly, the Court holds that "postponement of [any] decision," if such a decision should become necessary, "for its best fruition" is the appropriate course of action and will stay this case pending resolution of the parallel New York state court action.[5]

## III.    CONCLUSION

In summary, the Court holds that the first-filed rule does not apply to this case. Instead, the *Colorado River* abstention doctrine applies, and under that doctrine, this Court holds that abstaining from consideration of this case is appropriate. However, because the New York state court proceeding is not actually identical to this case, this Court orders that this case be stayed pending resolution of the New York state court parallel proceeding in

---

[5]    The Court need not and does not reach Radium2's arguments regarding forum non conveniens or the purportedly applicable forum selection clause.

15

order to ensure that the federal forum remains available to the parties if the state proceeding does not fully and finally resolve the matter.

**IT IS THEREFORE ORDERED THAT:**

1. Defendant's Motion to Dismiss [Doc. No. 10], or in the alternative Transfer Venue or Stay Case, is **GRANTED**;

2. This action is hereby **STAYED** pending resolution of the parallel proceeding New York state court.

Dated: October 9, 2019                    s/Susan Richard Nelson
                                          SUSAN RICHARD NELSON
                                          United States District Judge